# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |

Attorneys **NOT** Present for Plaintiffs:　　　Attorneys **NOT** Present for Defendants:

**Proceedings:**　　IN CHAMBERS (No Proceedings Held)

Before the Court is Plaintiff Wetzel's Pretzels's ("Wetzel's) Motion for a Preliminary Injunction.[1] The Court held a hearing on this Motion on June 27, 2011. For the following reasons, the Court GRANTS Wetzel's Motion.

## I.　BACKGROUND

This is an action for trademark infringement under the Lanham Act, common law trademark infringement, federal unfair competition under the Lanham Act, trademark infringement under California law, Cal. Bus. & Prof. Code § 14340, and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.

Plaintiff Wetzel's is "one of the leading franchisors of bakeries specializing in hand-rolled soft fresh-baked pretzels with over two hundred locations throughout several different countries." Compl. ¶ 8. Plaintiff has several registered trademarks, including the following: United States Registered Trademark No. 3,530,326 (typed word mark — WETZEL'S PRETZELS® — for goods and services: pretzels and hot dog sandwiches registered November 11, 2008) and No. 2,627,228 (typed word mark — WETZEL'S PRETZELS® — for goods and services: restaurant services registered October 1, 2002). Compl. ¶ 9. These marks are referred to collectively herein as the "Wetzel's Marks."

Defendants Tito and Tariq Johnson ("Defendants" or "Johnson Defendants")

---

[1]Dkt. 5.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

signed a Franchise Agreement with Wetzel to operate a bakery, with an initial ten year term and a start date of December 31, 2004, for a bakery located in Rancho Cucamonga. Declaration of Vincent Montanelli, Senior Vice President of Operations for Wetzel's ("Montanelli Decl."), Exh. A at 71. The Franchise Agreement granted a non-exclusive license to Defendants to utilize the Wetzel's Marks, in return for a percentage of the franchise's gross revenues, attributed to royalty fees and advertising expenses. Montanelli Decl. ¶ 9 & Exh. A at 8, ¶¶ 6.2, 6.3.

The Agreement required compliance with the Manual of Operations of the bakery, as well as agreeing to "periodic quality insurance inspections of the Bakery during normal business hours" and to correct any deficiencies that were revealed by the inspections. Montanelli Decl. ¶ 11 & Exh. A at 13, ¶ 7.2.7. Failure to comply with the inspections and to correct deficiencies, the Agreement states, constitutes a material breach of the agreement: "You must promptly correct any deficiencies in your operation of which we advise you. If you do not take immediate, effective steps to bring your operation up to our standards, your failure to do so will constitute a material breach of this Agreement." Montanelli Decl., Exh. A at 13, ¶ 7.2.7.

Plaintiff alleges that Defendants breached the Franchise Agreement by failing to comply with Wetzel's standards for the operation of the bakery, including product quality, maintenance and repair of equipment, and maintenance of a sanitary bakery. Compl. ¶ 19. Plaintiff alleges that on April 16, 2010, after several inspections, Plaintiff sent Defendants written notice of the defaults and provided 30 days to cure, pursuant to the Franchise Agreement. Compl. ¶ 20. Defendants allegedly failed to cure the defaults. *Id*. Accordingly, on June 3, 2010, Plaintiff provided Defendants with written notice that the Franchise Agreement was terminated, effective immediately. *Id*. Section 10.4(c) of the Franchise Agreement (Exh. A to the Complaint) provides that upon termination, Defendants must, among other things, "immediately and permanently" stop using the Wetzel's Marks and the Wetzel's System (the marketing concepts, recipes, trade secrets, etc. that are provided to franchisees). Compl. ¶ 8, 17.

Plaintiff alleges that despite the written notice of termination, Defendants continued to operate their franchise and to use the Wetzel's Marks without authorization from Plaintiff and in violation of the terms of the Franchise Agreement. Compl. ¶ 22. Plaintiff has sent a cease and desist letter, which Defendants have ignored. Compl. ¶ 23.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

Plaintiff also attempted to resolve these issues through arbitration and mediation pursuant to the settlement agreements. Compl. ¶¶ 23-24. None of these attempts resulted in a settlement. Compl. ¶ 24.

Defendants have filed an answer, along with counterclaims against Plaintiff. In essence, Defendants allege that Plaintiff improperly terminated the Franchise Agreement with Defendants. Compl. ¶ 21. Defendants bring five claims for relief against Plaintiff: (1) injunctive relief; (2) declaratory relief; (3) unfair business practices under the UCL; (4) breach of contract; and (5) tortious breach of the implied covenant of good faith and fair dealing.

Plaintiff seeks a preliminary injunction that orders Defendants to:

> . . . de-identify themselves from Wetzel's, including but not limited to taking down, and ceasing further use, of all signage . . . with the term "Wetzel's Pretzels" or "Wetzel's" contained therein . . . .

> . . . be enjoined from any and all use of the WETZEL'S PRETZELS® Marks . . . .

> . . . promptly destroy, or surrender to Wetzel's, all stationery, letterheads, forms, product packaging, uniforms, business cards, manuals, printed matter, films, books, cassettes, videotapes, licensed software and advertising containing WETZEL'S PRETZELS® Marks . . . .

> . . . be enjoined from using the WETZEL'S PRETZELS® System . . . .

> . . . be enjoined from doing anything which would indicate that Defendants, or any of them, are or ever were an authorized WETZEL'S PRETZELS® Bakery . . . .

> . . . promptly cancel and discontinue use of the telephone number(s) which served Defendants' bakery at the time of termination and to delete Defendants' WETZEL'S PRETZELS® listings in the Superpages, Yellow Pages and any other directory as well as on any internet websites.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

Proposed Order. Plaintiff also proposes a bond amount of not more than $1000. Memo, at 18.

## II. LEGAL STANDARD

As the Supreme Court has articulated,

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374).

A plaintiff also may obtain a preliminary injunction upon a showing of "serious questions going to the merits and a hardship balance that tips sharply towards the plaintiff . . ., so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance For the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1046 (9th Cir. 2010) (internal quotation marks omitted) (holding that "the 'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test").

"In all cases, the burden of persuasion remains with the party seeking preliminary injunctive relief." WILLIAM SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL, § 13:159 (2010) (citing *West Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 956 (11th Cir. 1982)). "Because a preliminary injunction is an extraordinary remedy, courts require the movant to carry its burden of persuasion by a 'clear showing.'" *Id.* at § 13:159.1 (citing *City of Angoon v. Marsh*, 749 F.2d 1413, 1415 (9th Cir. 1984)).

It used to be clear that in trademark infringement cases, if the plaintiff demonstrates a likelihood of success on the merits, the Court will presume irreparable injury because trademark damages are, by their very nature, irreparable. *Brookfield*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

*Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999). "This presumption effectively conflates the dual inquiries of this prong into the single question of whether the plaintiff has shown a likelihood of success on the merits." *GoTo.com*, 202 F.3d at 1205 n.4. However, in *eBay Inc., v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 1841 (2006), the Supreme Court found that the Federal Circuit had erred in its categorical rule that permanent injunctive relief will generally issue once a patentee establishes infringement and validity. The Supreme Court "[held] only that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* The Court also noted that "[t]his approach is consistent with [its] treatment of injunctions under the Copyright Act," under which the "Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *Id.* at 1840.

Although some district courts have applied the reasoning of *eBay* to motions for preliminary injunction in trademark infringement cases, in a decision issued after *eBay*, the Ninth Circuit still suggested that irreparable harm may be presumed upon a finding of a likelihood of success, albeit without citing *eBay* . *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GMBH*, 571 F.3d 873, 877 (9th Cir. 2009).[2]

## III.    DISCUSSION

### A.    Likelihood of Success on the Merits

In order to demonstrate success on the merits, Plaintiff must show that it is likely to succeed on claims of trademark infringement and unfair competition. To prevail on those claims, Plaintiff must show that Defendants' use of the Wetzel's marks is not only

---

[2]*But see Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1168 n.112 (C.D. Cal. 2009) (Morrow, J.) ("[T]he *Marlyn* court appeared to apply *Winter* and did not consider the impact of the Supreme Court's decision in *eBay*."). Judge Morrow concluded in this trade dress infringement case that plaintiff was not entitled to invoke a presumption of irreparable harm. *Id.* at 1169.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

unauthorized but also likely to cause confusion. *See Brookfield*, 174 F.3d at 1046-47.

Here, the parties dispute whether Defendants are no longer authorized to use the Wetzel's marks. Defendants contend that the termination of the franchise agreement, which would have stripped authorization from Defendants to use the Wetzel's marks, was improper. Opp. at 7. Defendants do not dispute, or even discuss, the underlying trademark allegations. Given Defendants' implicit concessions as to the trademark allegations, the Court finds that if the termination of the Franchise Agreement was proper, Plaintiff has demonstrated the use of the Wetzel's marks was unauthorized, and has accordingly met the "likelihood of success" requirement for the issuance of a preliminary injunction. Accordingly, the Court focuses its discussion on the propriety of the termination of the Franchise Agreement.

### 1.     Legal Standard

"[T]he Lanham Act's requirement that a franchisor demonstrate that unauthorized trademark use occurred to prevail on the merits of a trademark infringement claim against a franchisee necessitates some type of showing that the franchisor properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the *unauthorized* use of trademarks by the former franchisee." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1308 (11th Cir. 1998) (emphasis in original). *See also Century 21 Real Estate LLC v. All Professional Realty, Inc.*, No. Civ 2:10-2751, 2011 WL 221651, at *8 (E.D. Cal. Jan. 24, 2011) (Shubb, J.); *S&R Corp. v. Jiffy Lube Int'l*, Inc., 968 F.2d 371, 375 (3d Cir. 1992).

"Termination of a franchise agreement may be improper under either the terms of the agreement or state franchise laws." *Century 21*, 2011 WL 221651 at *8 (citing *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 430 (7th Cir. 2001)). Here, Defendants contend the termination was improper under the terms of the franchise agreement.

### 2.     Terms of the Agreement

Section 10.2.1 of the Agreement defines the procedure for termination by Notice of Default:

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

> This Agreement will terminate thirty (30) days after written notice of default is given to you if any of the defaults described in subsections (a) through (c) below has not been cured. This Agreement will terminate five (5) days after written notice is given to you if the default described in subsection (d) below has not been cured. This Agreement will terminate immediately when written notice is given to you if any of the defaults described in subsections (e) through (n) below occurs.

Montanelli Decl., Exh. A at 20 (§ 10.2.1). The Agreement goes on to describe the various acts of default which could result in termination of the Agreement, including (and relevant to this Motion):

> (b) . . . [I]f you operate your Bakery in a manner that does not conform to this Agreement and the Manual;
>
> (c) If you default in the performance of any material obligation under this Agreement not otherwise described in this list of defaults or if you are notified in writing of your material default under any other agreement with us or our Related Party;
>
> . . . .
>
> (l) If we give you written notice of any default and we have twice previously given you written notice of the same type of default within the preceding twelve (12) months, whether or not you have cured the defaults, or if you score less than ninety percent (90%) in three (3) or more government health inspections in a twelve- (12-) month period.

Montanelli Decl., Exh. A at 20-21 (§ 10.2.2). Defendants do not dispute that these are indeed the terms of the Agreement. They dispute, however, whether the termination itself was proper under the terms of the Agreement.

### **3. Propriety of Termination**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

    Defendants claim they are likely to prevail on the merits "based on the improper termination of the Franchise Agreement." Opp. at 15. They claim "Wetzel's has relied on unfounded, inconsistent, and arbitrary reasons to purportedly terminate the Franchise Agreement" and therefore, did not properly terminate the Agreement. *Id*. Plaintiff engaged in several inspections and communications with Defendants regarding deficiencies in the store's upkeep and maintenance. These include the following:

    <u>December 28, 2009</u>: Wetzel's inspected Defendants' franchise, and noted in the report various deficiencies, including: failure to keep the swinging door closed; granita machine clean/working; cleanliness of the refrigerators; cleanliness and working ability of the exterior sign; and cleanliness of ceiling vents and fans. Montanelli Decl., Exh. B. Defendants do not dispute the existence of this report, but point this Court only to the portion of the report where the store earned 100% of possible points and a "Good job!" comment as to the quality of its pretzels.

    On this same date, Wetzel's sent a letter to Defendant Tito Johnson, outlining the deficiencies found in the inspection, noting the store failed the visit with a score of 61%, and stating "[y]our failing the audit has put you in default of your franchisee agreement." Montanelli Decl., Exh. C, at 75. The letter, signed by Paul Shah, Wetzel's Director of Operations, stated that Defendants "need to resolve the deficiencies immediately" and "If you do not take immediate, effective steps to bring your operation up to Wetzel's Pretzels standards, your failure to do so will constitute a material breach of this agreement." *Id*. at 76.

    <u>February 22, 2010</u>: Wetzel's conducted a follow-up inspection of Defendants' store. Montanelli Decl. ¶ 17, and Exh. D. This inspection was conducted by Montanelli and, again, Wetzel's Direction of Operations Paul Shah. *Id*. Montanelli photographed the deficiencies he noticed, and attached them to a letter which he sent to Defendants dated February 25, 2010. *Id*. In that letter, Montanelli noted the deficiencies ("product quality, maintenance and repair, product contamination and general cleanliness") and stated, "your franchisee [sic] agreement will be in default upon re-inspection if the items in Paul's report and the attached are not resolved upon reinspection." *Id*.[3]

---

[3]In response to this letter, Defendant Tito Johnson contends he sent an email to Montanelli, detailing the replacements and repairs. Opp. at 4. However, Exh. 11 to the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

April 5, 2010: Wetzel's conducted another inspection of Defendants' store and again noted numerous violations, including: acceptability of panliners/sheets; swinging door open; cleanliness/working granita machine; cleanliness of refrigerators; condition of counters; cleanliness of work floors; cleanliness of customer floors; and failure to use a daily and weekly checklist. Montanelli Decl., Exh. E. Defendants contend, however, that their employee Patrick Labeau, who appears to have signed the report, was not working on April 5, 2010. Declaration of Tito Johnson ("Johnson Decl.") ¶ 13.

April 16, 2010: Wetzel's counsel sent a letter entitled "Notice of Default and Termination of Wetzel's Pretzels Franchise Agreement" to the Johnson Defendants. Montanelli Decl., Exh. F. The letter listed the violations, and added, "Unless you cure these violations within thirty (30) days after the delivery date of this notice, the Agreement will terminate on that date without further notice." *Id*. at 82.

That same day, April 16, 2010, Tito Johnson sent Montanelli an email attempting to correct and clarify the "erroneous statements" in Wetzel's letter, claiming Mr. Labeau, who signed the report, was not working on April 5, 2010, that Paul Shah told Defendants' manager "that he was not inspecting and did not require her to sign any paperwork," and so Defendants "were not informed of any inspection that had occurred." Montanelli Supp. Decl., Exh. 1, at 9. The email also contained a belated response to Wetzel's February 2010 letter. *Id*. On April 23, 2010, Montanelli responded to the email, stating, "Sorry you feel that way. If you think your attorney needs to call our attorney, please feel free to have him do so. I will re-visit the store with Paul in the near future to follow up." Montanelli Supp. Decl., Exh. 1, at 9. On May 5, 2010, Montanelli sent a follow up email, attempting to contact Tito Johnson, to "follow up on the operations at the store and the invoice due" and asking Johnson to call him. *Id*. at 8. Johnson responded on May 6, 2010 that he would call "later today." *Id*.

---

Tito Johnson Declaration, which Defendants claim is the email, is in fact an estimate from "Barton Builders" dated March 5, 2010 of repairs to be made to the shop, and is neither an email nor proof that such repairs were made. There is a response to the February 22, 2010 correspondence as part of Tito Johnson's April 16, 2010 email, attached as Exh. 1 to the Montanelli Supplemental Declaration. That letter is discussed below, under the April 16, 2010 header.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

May 6, 2010: Tito Johnson and Montanelli discussed on the phone the deficiencies with Defendants' store, the importance of replacing the panliners, and that those panliners would need to be replaced prior to Wetzel's next visit to the store. Montanelli Supp. Decl. ¶ 5.

May 27, 2010: Wetzel's conducted another inspection of Defendants' store and found that Defendants had not cured a majority of the identified defaults. Montanelli Decl. ¶ 20 & Exh. G, H; Montanelli Supp. Decl. ¶ 6. These included: acceptability of panliners/sheets; swinging door open; granita clean/working; counters in good condition; and daily cleaning checklist in use. Montanelli Decl., Exh. G.

June 3, 2010: Wetzel's counsel sent a letter to Defendants entitled "Notice of Termination of Wetzel's Pretzels Franchise Agreement and Exercise of Option to Purchase." Montanelli Decl., Exh. I. That letter listed the defaults Defendants failed to cure, and stated, "notice is hereby given that your Agreement has been terminated effective immediately." *Id.* at 90.

To summarize, Wetzel's inspected Defendants' store on four separate occasions: December 28, 2009, February 22, 2010, April 5, 2010, and May 27, 2010. Each of these visits was followed by a letter to Defendants notifying them of the found deficiencies, and of the consequences of failing to cure them. The April 16, 2010 letter specifically gave Defendants 30 days to cure the deficiencies before termination. That letter was also followed by other communications (emails and a telephone call) clarifying the identified deficiencies. Termination occurred on June 3, 2010 after these four inspections, and after the given warnings.

The termination complied with the prescribed notice periods of the agreement, and with the listed actions constituting breach. Montanelli Decl., Exh. A, §§ 10.2.1-10.2.2. While Defendants contend they cured the deficiencies listed, they did not provide any documentation corroborating or proving such cures, apart from Johnson's declaration. Defendants also contend that they have continued to make royalty payments and pay advertising fees to Wetzel's, which Wetzel's continues to accept. Johnson Decl. ¶ 16. However, Defendants have provided no proof of these payments (receipts, checks, store payments) and as a result, the Court is not able to conclude from the declaration alone that Wetzel's has in fact received and accepted such payments.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

Because the Court finds Wetzel's properly terminated the Franchise Agreement on June 3, 2010, the Court finds that any use of the mark by Defendants after that date was an unauthorized use. As noted in *McCarthy on Trademarks and Unfair Competition*:

> Once a franchise, dealership or license contract is terminated, there is no doubt that the former franchisee, dealer or licensee has no authorization or consent to continue use of the mark. After the permission to use the mark has ended, use of the mark must cease. The terminated dealer who is a "hold-over" and refuses to change the mark is an infringer. Continued use by former franchisee, dealer or licensee of the mark constitutes a fraud on the public, since they are led to think that the continuing user is still connected with the trademark owner.

J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:31 (4th ed. 2011). Defendants have conceded that they continued to use the Wetzel's marks after notification of termination, and Wetzel's has therefore demonstrated the unauthorized use of its trademarks. Moreover, because Defendants have failed to contest the merits of Plaintiff's trademark infringement claims, the Court finds that Plaintiff has demonstrated a likelihood of success on the merits, and accordingly, spends the remainder of its analysis on irreparable harm, the balance of hardships, and the public interest.

### B. Irreparable Harm, Balance of Hardships, and Public Interest

Having found that Plaintiff has demonstrated a likelihood of success on the merits, under current Ninth Circuit law, the Court is permitted to presume irreparable harm. But even without that presumption, given that Defendants are engaging in the unauthorized use of Wetzel's marks, the Court finds that unless Plaintiff is allowed to protect its marks, its ability to control its reputation and goodwill associated with the marks will be significantly reduced. *See., e.g., CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) (Damrell, J.) ("The court finds that CS has shown that VPX's MUSCLE POWER® mark and trade dress so closely resemble the MUSCLE MILK® mark and trade dress, especially when viewed in the marketplace, that CS has likely lost some control over its reputation in the market. As a result, VPX's ongoing use

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

of its MUSCLE POWER® mark and trade dress is likely to confuse consumers, thereby causing CS substantial and irreparable harm.").

As for the balance of hardships, Plaintiff has presented related arguments that it has suffered, or will suffer, irreparable harm due to Defendants' actions, including harm to its goodwill and reputation. Mot. at 17; Reply at 17. Defendants claim that Wetzel's, a large company, will not be adversely affected by the denial of a preliminary injunction while Defendants' franchise, a small business, would be obligated to "close the family business, lay-off the employees, and would still be obligated to pay rent and other business-related obligations." Opp. at 18 (citing Johnson Decl. ¶ 36). While it is apparent that Defendants would suffer a loss of revenue and that its employees would, in all likelihood, lose their employment, it is Defendants who brought on those risks.

It is not clear that Defendant would be obligated to pay rent or continue "other business-related obligations" and nothing in this injunction would prevent Defendants from doing so. The Court is not willing to engage in speculation as to whether Wetzel's would "likely seek to enjoin" Defendants from opening another business in the same location, or attempt to seize Defendants' assets in the building. Rather, based on the facts as presented to this Court, the Court finds that the balance of hardships favors Plaintiff.

The Court finds the public interest weighs in favor of an injunction. "In the trademark context, courts often define the public interest at stake as the right of the public not to be deceived or confused." *Cytosport*, 617 F. Supp. 2d at 1081. Here, the public has a strong interest in being free from the confusion caused by unauthorized use of Wetzel's marks. Defendants contend that they have been involved in "community affairs," including assisting with school fundraisers, which has "built good will with the community." Opp. at 18. Such goodwill does not go towards the larger public interest to be free from deception and confusion. Accordingly, the Court finds the public interest favors Plaintiff.

In short, the Court finds that Plaintiff has met the requirements for the issuance of a preliminary injunction.[4]

---

[4]Although at first blush there could be a significant issue as to whether equitable relief is warranted after a lapse of a full year following the termination, the Court is

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-04459 AHM (SPx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | WETZEL'S PRETZELS, LLC v. TITO JOHNSON, et al. | | |

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for a Preliminary Injunction.[5]

As a condition of this injunction going into effect, and pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff is ORDERED to post a bond in the amount of $40,000.00.

: _____

Initials of Preparer     SMO

cc: **Fiscal**

---

satisfied that no such issue actually bars such relief, because Wetzel's was actively engaged in good faith settlement negotiations during this time pursuant to the Franchise Agreement. *See* Declaration of Calvin E. Davis, counsel for Plaintiff ("Davis Decl.") ¶¶ 2-11 (discussing arbitration and mediation procedures, which began on October 7, 2010, after a months-long correspondence between the parties over the value of the assets in the Rancho Cucamonga bakery).

[5] Dkt. 5.