1  Willie W. Williams, SBN 233902
   www@williewilliamslaw.com
2  LAW OFFICES OF WILLIE W. WILLIAMS
   9327 Fairway View Place, Suite 304
3  Rancho Cucamonga, CA 91730
   Phone: (909) 581-8341
4  Fax: (909) 586-9380

5  Attorney for Defendants Tito Johnson and Tariq Johnson

6

7

8

9                  UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| WETZEL'S PRETZELS, LLC, a California limited liability company;<br><br>                               Plaintiffs,<br><br>             v.<br><br>TITO JOHNSON, an individual; and TARIQ JOHNSON, an individual,<br><br>                               Defendants. | Case No.  CV 11-04459 AHM (SPx)<br><br>[Hon. A. Howard Matz]<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND TO DISMISS COUNTERCLAIMS** |
| TITO JOHNSON, an individual; and TARIQ JOHNSON, an individual,<br><br>                               Counterclaimants,<br><br>             v.<br><br>WETZEL'S PRETZELS, LLC, a California limited liability company,<br><br>                               Counterdefendant. | Date: August 8, 2011<br>Time: 10 a.m.<br>Department: 14<br>Judge A. Howard Matz |

25

26

27

28

i

1

2

# TABLE OF CONTENTS

I.   INTRODUCTON ...........................................................................................1

II.   BACKGOUND .............................................................................................2

III.   ARGUMENT ...............................................................................................3

   A.  Defendants' Counterclaims Are Compulsory Under Rule 13(a) And Must Be Litigated in This Court. ...........................................................................3

   B.  Arbitration Provisions Are Unenforceable If They Are – As Here – Unconscionable. ......................................................................................4

      1.   The Arbitration Provision is Procedurally Unconscionable. ........................5

      2.   The Arbitration Provision is Substantively Unconscionable. ......................8

      3.   The Arbitration Procedures in the Arbitration Provision Impose Additional Limitations That Are Unfair. .................................................................13

   C.  Plaintiff's Request For Dismissal Is Inappropriate. ..................................14

IV.   CONCLUSION ...........................................................................................14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS COUNTERCLAIMS

1

2

## TABLE OF AUTHORITIES

3

**Cases**

4  *Abramson v. Juniper Networks, Inc,* 115 Cal.App.4th 638 (2004) ..........................11

5

6  *A&M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 486 (1982) ..................5, 6

7  *Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal.4th 83 (2000) 5,
   15

8

9  *Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101, 1105 (2003) ...........................7

10  *Ferguson v. Countrywide Credit Industrial,* 298 F.3d 778, 781 n. 2 and 784-85 (9th

11   Cir. 2002) .........................................................................................................12

12  *Fitz v. NCR Corp.,* 118 Cal.App.4th 702,716 (2004) ....................................9, 12

13

14  *Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court of San Diego,*

15   133 Cal. App. 4th 396, 407 (2005) ...............................................................7, 13

16  *Kinney v. United Health Care Services. Inc.,* 70 Cal.App.4th 1322, 1329 (1999) ...6

17

18  *Lloyd v. Hovensa,* 369 F.3d 263 (3d Cir. 2004) ................................................14

19  *Martinez v. Master Protection Corp.,* 118 Cal.App.4th 107 (2004) ..................9, 12

20

21  *Mercuro v. Superior Court,* 96 Cal.App.4th 167 (2002) ....................................11

22  *Myers Bldg. Industries, Ltd. v. Interface Technology, Inc.,* 13 Cal. App. 4th 949

23   (1993) ...............................................................................................................13

24  *Neal v. State Farm Insurance Companies,* 188 Cal.App.2d 690, 694 (1961)...........5

25

26  *O'Hare v. Municipal Resource Consultants,* 107 Cal.App.4th 267, 284 (2003)......8

27  *S&R Corporation v. Jiffy Lube International, Inc.,* 968 F.2d 371, 374-75 (3d Cir.

28   1992) ..................................................................................................................4

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS COUNTERCLAIMS

*Sparling v. Hoffman Construction Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)....15

*Stirlen v. Supercuts, Inc.* 51 Cal.App.4th 1519, 1533 (1997)..............................5, 9

*Szetela v. Discovery Bank*, 97 Cal.App.4th 1094 (2002)
.........................................................................................................5, 6

**Statutes**

9 U.S.C.S. § 3.................................................................................14

Civ. Code § 1670.5 .........................................................................5

Fed.R.Civ.P., Rule 13(a)..............................................................1, 3

4817-1745-7674, v. 1

iv

1

2      Defendants Tito Johnson and Tariq Johnson ("Defendants") hereby

3  file this Opposition to Plaintiff's Motion to Compel Arbitration and to Dismiss

4  Counterclaims, and in support thereof state as follows:

5

6  **I.      INTRODUCTON**

7

8      Plaintiff and Counter-defendant Wetzel's Pretzels ("Wetzel's" or

9  "Plaintiff") seeks, once again, to force Defendants, who own a small family

10 business, into Wetzel's forum of choice – arbitration – but only on the claims that

11 Wetzel's deems appropriate for that forum.  Wetzel's filed the instant lawsuit to

12 shut down Defendants' business and, after Defendants filed counterclaims

13 indicating that the termination of the franchise agreement was improper, Wetzel's

14 aggressively seeks to compel only those claims into arbitration.  According to

15 Wetzel's, the purported Arbitration Provision requires the parties to resolve only

16 certain claims (i.e., Defendants' counterclaims) before only one dispute resolution

17 organization (i.e., the American Arbitration Association or "AAA") in front of a

18 limited pool of potential arbitrators (i.e., only attorneys with substantial franchise

19 law experience practicing with AAA) in a specific city (i.e., Los Angeles).  This

20 provision is unfair and against public policy.

21      This Court should not force Defendants into arbitration for several

22 reasons.  First, Defendants' counterclaims are compulsory under the Rule 13(a) of

23 the Federal Rules of Civil Procedure ("Rule 13(a)") and need to be adjudicated in

24 the same forum as Wetzel's claims.  Second, Wetzel's pre-printed, non-negotiated

25 franchise agreement is a contract of adhesion, so it is "procedurally

26 unconscionable."  Third, Wetzel's Arbitration Provision, among other problems,

27 unfairly limits the arbitrator's powers and the scope of claims to be heard, so it is

28

1

"substantively unconscionable."  For these reasons, Defendants request that the Motion to Compel Arbitration be denied in its entirety.

## II.  BACKGOUND

In late-2004, Wetzel's presented to Defendants – in "take-it-or-leave-it" fashion – its standard franchise agreement.  Wetzel's representatives did not explain the document and the parties did not negotiate or modify any of the principal terms.  Defendants, who wanted the opportunity to operate a small family business, were not experienced businesspersons and had no experience in operating a franchise. (Declaration of Defendant Tito Johnson ("Johnson Decl."), ¶ 4).

Defendants, individually, and Wetzel's entered into a franchise agreement with an initial 10 year term starting on December 31, 2004 ("Franchise Agreement").  Under the Franchise Agreement, Defendants were to operate a Wetzel's store at Victoria Gardens in Rancho Cucamonga.  At the time, there was no existing store, so Defendants had to develop the business from the very early stages. (Johnson Decl., ¶ 3).

The Franchise Agreement contains an arbitration provision that, among many things, purportedly (1) requires Defendants to arbitrate all of their claims while expressly exempting Wetzel's from arbitrating all of their claims against Defendants; (B) requires Defendants to file their claims exclusively with the AAA in Los Angeles; (C) requires Defendants to select a lawyer (and not a judge) with "substantial" franchise law experience to be an arbitrator; (D) requires the Defendants to pay half of the costs of arbitration, which is substantially more than Defendants would pay in costs to pursue their remedies in a public forum; (E) limits the power of the arbitrator to (1) stay the effectiveness of any pending termination of a franchise; (2) assess punitive damages; or (3) make any award that modifies or suspends any lawful provision of the Franchise Agreement; and (F)

2

1  limits the parties right to discovery.  ("Arbitration Provision") (Complaint, Exh. A,
2  ¶ 11.8).
3        On or about May 24, 2011, Wetzel's filed the Complaint in this Court.
4  The Complaint contains five causes of action: (1) trademark infringement; (2)
5  common law trademark infringement; (3) federal unfair competition; (4) California
6  statutory trademark infringement; and (5) California unfair competition.  In
7  addition to filing the Complaint, Wetzel's, on the same day, filed the Motion for a
8  Preliminary Injunction, requesting that the Court stop Defendants' from operating
9  their business.  After a hearing on June 27, 2011, the Court granted the preliminary
10  injunction.  On or about June 17, 2011, Defendants filed their Answer and
11  Counterclaims alleging numerous causes of action all relating to the business
12  relationship between the parties.  Now, Wetzel's seeks to keep its claims before
13  this court while forcing Defendants' claims into arbitration.

## III.    ARGUMENT

### A.    DEFENDANTS' COUNTERCLAIMS ARE COMPULSORY UNDER RULE 13(A) AND MUST BE LITIGATED IN THIS COURT.

Wetzel's argues that the claims at issue here should be split into
separate forums and Wetzel's should litigate its claims here (i.e., where it wants)
and Defendants' should pursue their claims in arbitration (i.e., where Wetzel's
wants).  Defendants' claims, however, are compulsory and should be decided by
this Court.

Rule 13(a) provides that a defendant must file a counterclaim, if the
defendant has a claim against plaintiff that: "arises out of the transaction or
occurrence that is the subject matter of the opposing party's claim."  Here,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS COUNTERCLAIMS

1   Defendants' cause of actions must be brought in this proceeding because they arise

2   from the same transaction or occurrence as Wetzel's claims.

3       In this case, Wetzel's has alleged various trademark-related causes of

4   action arising following the purported termination of the Franchise Agreement.

5   Specifically, Wetzel's, in its Memorandum in Support of the Motion for a

6   Preliminary Injunction ("PI Memorandum"), refers to Defendants as a "hold over"

7   franchisee and then explains, *over the course of six (6) pages*, the purported breach

8   and termination of the Franchise Agreement. (PI Memorandum, pp. 1:4, 3:22-

9   8:28). Importantly, a franchisor seeking to enjoin a franchisee from operating must

10  first establish that the franchise agreement was properly terminated based on

11  sufficient facts. *S&R Corporation v. Jiffy Lube International, Inc.*, 968 F.2d 371,

12  374-75 (3d Cir. 1992). In other words, Wetzel's, in order to prevail on its

13  Complaint, must establish that it properly terminated the Franchise Agreement.

14

15      Defendants vigorously dispute that the Franchise Agreement was

16  properly terminated and, thus, filed their Counterclaims arising from the improper

17  termination of the Franchise Agreement. Specifically, Defendants filed their

18  Counterclaims asserting the following causes of action: (1) injunctive relief; (2)

19  declaratory relief; (3) unfair business practices; (4) breach of contract; and (5)

20  tortious breach of the implied covenant of good faith and fair dealing. All of these

21  claims arise from the parties' business relationship and the improper termination of

22  the Franchise Agreement. Thus, these are compulsory counterclaims that must be

23  brought in this litigation, or they would be subject to waiver

24  **B.   ARBITRATION PROVISIONS ARE UNENFORCEABLE IF THEY ARE – AS**

25  **HERE – UNCONSCIONABLE.**

26

27      An arbitration agreement, like any other contract, is unenforceable if it

28  is unconscionable. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24

4

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS COUNTERCLAIMS

Cal.4th 83 (2000); (*See* Civ. Code § 1670.5, codifying common law unconscionability doctrine). A contract to arbitrate is unenforceable when there are both "procedural and substantive elements of unconscionability ... [and they] need not be present in the same degree ... [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Foundation Health Psychare Services, Inc,.* 24 Cal.4th 83, 114 (2000). In other words, an arbitration provision is not enforceable if it both procedurally and substantively unconscionable. *Stirlen v. Supercuts, Inc.* 51 Cal.App.4th 1519, 1533 (1997). Here, the Arbitration Provision is both.

## 1.    The Arbitration Provision is Procedurally Unconscionable.

The Arbitration Provision is procedurally unconscionable because (1) there was unequal bargaining power between Wetzel's, a large franchisor, and Defendants, who were novice businessmen, (2) the Franchise Agreement was not negotiated, and (3) the Arbitration Provision is buried in a standardized, form contract.

An agreement is procedurally unconscionable when it is a contract of "adhesion," defined as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm Insurance Companies*, 188 Cal.App.2d 690, 694 (1961); *A&M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486 (1982). Unconscionability exists under California law when one party lacks meaningful choice in entering the contract or negotiating its terms and the terms are unreasonably favorable to the other party. (*Id.*; *Szetela v. Discovery Bank*, 97 Cal.App.4th 1094 (2002).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS COUNTERCLAIMS

Procedural unconscionability involves one or both of two things: "oppression" and "surprise." *A&M Produce*, 135 Cal.App.3d at 486. "Oppression" arises from "an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." *Kinney v. United Health Care Services. Inc.*, 70 Cal.App.4th 1322, 1329 (1999) (emphasis supplied).) In this case, the procedural unconscionability of Defendant's arbitration agreement is particularly severe as both "oppression" (unequal bargaining power) and "surprise" (the provision is buried in a pre-printed contract) are present here.

The determination as to whether an arbitration agreement is "oppressive" requires an evaluation of how the parties negotiated the contract and the circumstances of the parties at the time. *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (2003). A "meaningful opportunity to negotiate or reject the terms of a contract must mean something more than an empty choice ... he must have an actual, meaningful, and reasonable choice to exercise that discretion." *Id.* at 1106. Hence, "[w]hen the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present." *Szetela*, 97 Cal.App.4th at 1100. As explained below, the Arbitration Provision is procedurally unconscionable for several reasons.

First, there was a tremendous disparity of bargaining power between Plaintiff and Defendants. Courts have acknowledged that franchise agreements have "some characteristics of contracts of adhesion." *Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court of San Diego*, 133 Cal. App. 4th 396, 407 (2005). Moreover, courts have explained that one of these characteristics is the "clear disparity in the bargaining power of franchisors versus franchisees." *Id.* (citations omitted). Plaintiff is one of the largest franchisors in the country for

6

selling pretzels and other related goods. There are more than 200 Wetzel's Pretzels across the country. At the time that the parties entered into the Franchise Agreement (i.e., 2004), Defendants were embarking on their first business venture and were not sophisticated businessmen. (Johnson Decl., ¶ 4). Wetzel's was in a superior bargaining position because of its large size and sophistication in operating franchises. Moreover, Wetzel's is one of only a few large retail franchisors specializing in selling pretzel's and related products. Thus, there is no question that Wetzel's was in a significantly superior bargaining position.

Second, Defendants were not given an opportunity to negotiate the terms of the Franchise Agreement. When Defendants showed interest in opening up a Wetzel's franchise, Plaintiff approached Defendants presented them with the Franchise Agreement for signature. Simply put, there was no negotiation of the terms of the Franchise Agreement. (Johnson Decl., ¶ 5). Specifically, Defendants were not even aware that there was an Arbitration Provision until Wetzel's sent the termination letter in June 2010. (Johnson Decl., ¶ 6).

Third, the Arbitration Provision appears in a pre-printed form contract, which is presented to prospective franchisees for signature. Courts have inferred unconscionability from such formulaic and standardized documents. *See, e.g., O'Hare v. Municipal Resource Consultants*, 107 Cal.App.4th 267, 284 (2003) (holding a boilerplate contract where the only handwritten portion filled in by the employee was the salary amount unconscionable). In this case, the standard franchise agreement is on a pre-printed form, which leaves no room for negotiation, additions, or amendments. The Franchise Agreement is single-spaced and 27 pages long and includes numerous pre-printed addenda. *See* Exhibit A to Complaint.

For these reasons, the Arbitration Provision is procedurally unconscionable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.   The Arbitration Provision is Substantively Unconscionable.

The Arbitration Provision is substantively unconscionable because, among other things, it severely limits discovery, severely limits the powers of the arbitrator, and dictates the specifics of arbitrator selection.

> a.   The Severe Limitation on Discovery Makes the Arbitration Provision Substantively Unconscionable.

Standing alone, the Arbitration Provision is substantively unconscionable because there is a severe limit on discovery that is permitted during any arbitration between the parties. In *Fitz v. NCR Corp.*, 118 Cal.App.4th 702,716 (2004), the court stated: "The curtailment of discovery to only two depositions does not have mutual effect and does not provide [plaintiff] with sufficient discovery to vindicate her rights. . . ." Similarly, in *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107 (2004) (the court found a discovery limitation as impermissible. In *Martinez*, the agreement provided that absent a showing of "substantial need," each party was limited to one deposition, plus experts, and a document request. *Id.* at 118 and n. 6.

Here, the Arbitration Provision appears to limit discovery unless the parties agree otherwise.  Specifically, the Arbitration Provision states: "There will be no discovery except that required by applicable state law unless the parties mutually agree otherwise."  Although the wording is ambiguous, it appears that there cannot be any substantial discovery unless the parties agree to have discovery.  The provision indicates that the only discovery allowed is that discovery that is "required by applicable state law."  Under state law, there are very few items in discovery that are *required*; instead there are many things that are *permitted*.  For example, a party is permitted (but not required) to serve interrogatories, document demands, and requests for admission.  Since these discovery tools are not *required* under state law, then Wetzel's could take the

8

---

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS COUNTERCLAIMS

1  position that they do not have to respond to discovery requests unless they

2  specifically agree to do so.  This discovery provision is illusory because there is no

3  guarantee that Wetzel's will agree to engage in meaningful discovery.  In this

4  context, limiting discovery is particularly troublesome for Defendants because

5  evidence of their claims is primarily in the custody and control of Wetzel's.  This

6  severe limitation on discovery makes the Arbitration Provision substantively

7  unconscionable.

8

9

10    b. The One-sided Limitation on the Arbitrator's Powers Makes the

11      Arbitration Provision Substantively Unconscionable.

12    Here, the Arbitration Provision suffers from a lack of mutuality

13  because it impermissibly restricts the arbitrator from (1) staying the effectiveness

14  of any pending termination of a franchise; (2) assessing punitive damages; and (3)

15  making any award that modifies or suspends any "lawful" provision of the

16  Franchise Agreement.  These "carve outs" are functionally one-side and strongly

17  favor Wetzel's in its legal maneuvers to terminate franchise agreements.

18    There are numerous courts which have held such clauses to be

19  unconscionably one-sided.  In *Stirlen*, 51 Cal.App.4th 1519, the Court of Appeal

20  made clear that such a similar carve-out was substantively unconscionable.  *Id.* at

21  1528.  In *Stirlen*, the employer sought to enforce an arbitration agreement which

22  excluded from arbitration "[a]ny action initiated by the Company seeking specific

23  performance or other equitable relief in connection with any breach or violation [of

24  the paragraphs of the agreement pertaining to patent infringement, improper use of

25  confidential information and competition]."  The court held the exemption

26  evidenced a lack of mutuality and that, in reality, only claims of the employees

27  would be arbitrated.  *Id.* at 1536-37, 1540-41.  Similarly, in *Mercuro v. Superior*

28  *Court*, 96 Cal.App.4th 167 (2002), the Court of Appeal held substantively

9

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS COUNTERCLAIMS

unconscionable a provision, which exempted from arbitration "'claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information.'" *Id.* at 176. The court found that the agreement lacked mutuality because it "compel[led] arbitration of the claims employees are most likely to bring against Countrywide...[but]...exempts from arbitration the claims Countrywide is most likely to bring against its employees." *Id.* at 176. Subsequent cases have followed suit.

Numerous other courts have come to the conclusion that an arbitration provision is substantively unconscionable where there are substantial carve outs limiting the arbitrators' powers. For example, in *Abramson v. Juniper Networks, Inc,* 115 Cal.App.4th 638 (2004), the court held that a carve out similar (but narrower) to the one here was "explicitly unilateral," because like the carve out here, "[i]t grant[ed] only 'the Company' the right to seek injunctive relief in court for 'misuse or appropriation of the Company's trade secrets or confidential and proprietary information.'" *Id.* at 665 (emphasis added). *See also Ferguson v. Countrywide Credit Industrial*, 298 F.3d 778, 781 n. 2 and 784-85 (9th Cir. 2002) (exemption for "'claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or unauthorized disclosure of trade secrets or confidential information'" held substantively unconscionable); *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107, 111 n. 1 and 115 (2004) (exemption for "'claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information" held substantively unconscionable); *Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 709, 725 (2004) (exemption for "'disputes over confidentiality/noncompete agreements or intellectual property rights,'" held substantively unconscionable).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND TO DISMISS COUNTERCLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, the "carve-out" provisions are one-sided, strongly favoring Wetzel's in any dispute with a franchisee. Importantly, the Arbitration Provision allows the parties to "seek provisional injunctive relief from a court of competent jurisdiction." This "carve-out" favors Wetzel's because, presumably, it is allowed to file a complaint and motion for a preliminary injunction to promptly stop a franchisee from operating. Interestingly, that is exactly what happened here. Wetzel's filed the preliminary injunction motion and, now, seeks to move forward with its trademark-related claims in court, while seeking to compel arbitration of Defendants' affirmative claims. This is precisely why Wetzel's carved out the provisional injunctive relief, so that the claims that it is likely to bring (i.e., trademark-related claims on a motion for a preliminary injunction) can be promptly heard in court, while forcing Defendants' claims to arbitration. Even after Wetzel's prevailed on its preliminary injunction motion, it is still moving forward in court –and not arbitration – on its trademark-related claims.

In addition to "carving out" injunctive relief, the Arbitration Provision contains substantial limitations on the arbitrator's powers to grant relief.

First, the arbitrator cannot stay the effectiveness of any pending termination of a franchise. This provision strongly favors Wetzel's because there are numerous items that trigger a default and potential termination by Wetzel's, while the franchisee can only voluntarily terminate the agreement with sixty (60) days notice. *See* Franchise Agreement, ¶ 10.2 (Exh. A to Complaint). Under this carve out, Wetzel's can involuntarily terminate the franchise agreement and the arbitrator would be powerless to stop or stay the pending termination. This is precisely the situation here because the arbitrator cannot stop or stay the termination of the Franchise Agreement. This is one-sided and inserted only for Wetzel's benefit.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND TO DISMISS COUNTERCLAIMS

1

2   Second, the arbitrator cannot assess punitive damages.  California

3   courts have held that such a limitation on remedies is "against public policy and

4   unconscionable." *Independent Ass'n*, 133 Cal. App. 4th at n. 7 (citing *Stirlen v.*

5   *Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1529-30, 1552).  Thus, on its face, the

6   limitation on the arbitrator's power to assess punitive damages renders the

7   Arbitration Provision unconscionable.  Here, Defendants have asserted claims for,

8   among other things, tortious breach of the covenant of good faith and fair dealing

9   (i.e., bad faith).  Under California law, a prevailing party may obtain punitive

10  damages on a bad faith claim.  *See, e.g., Myers Bldg. Industries, Ltd. v. Interface*

11  *Technology, Inc.*, 13 Cal. App. 4th 949 (1993).  Defendants are likely to amend

12  their Counterclaims to request punitive damages for this bad faith claim.  If this

13  court were to enforce the Arbitration Provision, then Defendants would not be

14  allowed to pursue any punitive damages.  In this situation, the limitation is one-

15  sided, strongly favoring Plaintiff.  In this case, Plaintiff is not pursuing any

16  punitive damages against Defendants.  In general, a franchisee is much more likely

17  to seek punitive damages against a franchisor than the other way around.

18  Specifically, given the large-size of Wetzel's and the typical small size of a

19  franchisee, the punitive damages claims would generally be much more valuable to

20  franchisees.  Thus, this limitation on punitive damages is one-sided and strongly

21  favors Wetzel's.

22   Third, the arbitrator has no power to modify or suspend any lawful

23  provision of the Franchise Agreement.  This limitation on the arbitrator's power is

24  unconscionable and one-sided.  As outlined above, courts analyze with caution

25  provisions which limit an arbitrator's powers to provide remedies.  Wetzel's is

26  unlikely to seek to modify or suspend any part of the Franchise Agreement because

27  Wetzel's is the party who drafted it.  Thus, this provision is one-sided and strongly

28  favors Wetzel's.

12

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS COUNTERCLAIMS

### 3.   The Arbitration Procedures in the Arbitration Provision Impose Additional Limitations That Are Unfair.

The Arbitration Provision contains additional dictates that make imposition of the provision substantively unconscionable.

First, the Arbitration Provision narrowly restricts the potential available arbitrators. The arbitrator must be selected from the panel of arbitrators provided by the American Arbitration Association in the Los Angeles office. The arbitrator cannot be a retired judge; *only* an attorney can serve as an arbitrator. Furthermore, the arbitrator must have "substantial experience in franchise law." These multiple restrictions severely narrow the pool of potential arbitrators. This provides an unfair tactical advantage to Wetzel's because it essentially makes Wetzel's a substantial player in an extremely small pool of arbitrators.

Second, the Arbitration Provision dictates that the costs of arbitration should be split evenly between the parties. In other cases where there is a disparity in resources, courts have held that the party seeking to enforce the arbitration provision must bear the costs associated with arbitration. *See Armendariz*, 24 Cal. 4th at 110-11, 113. Because of the disparity in resources, Wetzel's, a very large company, has yet another tactical advantage. The substantial costs of arbitration, which may not be recoverable, provide yet another barrier for Defendants to pursue their claims in arbitration. In this instance, if the Court requires Defendants to share equally the costs of arbitration, then it would present a substantial hardship to Defendants pursuing the Counterclaims. (Johnson Decl., ¶ 7).

13

## C.   PLAINTIFF'S REQUEST FOR DISMISSAL IS INAPPROPRIATE.

Plaintiff requests that the Court compel arbitration and dismiss Defendants' Counterclaims.  The Court, however, should, if the Motion to Compel is granted, retain jurisdiction over the matter by placing a stay on the proceedings.

Plaintiff cites *Sparling v. Hoffman Construction Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) for the proposition that the Court should dismiss Defendants' Counterclaims, if it elects to enforce the Arbitration Provision. *Sparling*, however, is distinguishable.  The *Sparling* court held that the trial court's dismissal of the claims was appropriate because *all* of the claims at issue were subject to arbitration.  Here, this is not the case because both Plaintiff and Defendant have claims that are presumably not subject to arbitration (i.e., claims for injunctive relief).  Importantly, Plaintiff does not seek to compel arbitration on Defendants' First Cause of Action for Injunctive Relief and the Court has already entered a preliminary injunction based on Plaintiff's trademark-related claims.

Instead of dismissing all of the claims, the Court is required to stay the proceedings.  Pursuant to 9 U.S.C.S. § 3, a court "shall" stay the trial of an action upon the finding the claims at issue are referable to arbitration.  *See, e.g., Lloyd v. Hovensa*, 369 F.3d 263 (3d Cir. 2004).  The claim should also be stayed (and not dismissed) so that the Court can retain jurisdiction over the preliminary injunction order and deal with remaining claims in this litigation.

## IV.   CONCLUSION

For the foregoing reasons, Defendants request that the Court DENY the Motion to Compel Arbitration.  In the event that the Court grants the Motion, Defendants request that the claims be stayed (and not dismissed) pending the outcome of arbitration.

14

1

2
                                   Respectfully Submitted,

3
  Dated:  July 18, 2011            LAW OFFICES OF WILLIE W. WILLIAMS

4

5
                          By:     /s/
                                  Willie W. Williams

6
                        Attorney for Defendants Tito Johnson and Tariq

7
                        Johnson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS COUNTERCLAIMS